UNITED STATES FIDELITY & GUARANTY CO. *v.* JEFFERSON DAVIS COUNTY.

[75 South. 247, Division B.]

1. HIGHWAYS. *Contracts to work roads. Liability on bonds.*
   Where a road contractor refused to carry out his contract with the county to work certain roads and tendered his resignation, in which he stated that the contract was void, that he was carrying it out at a great financial loss and could not continue to do so, he broke his contract and the surety on his bond became liable for the actual damage sustained by the county as the result of an admitted breach of the contract.

2. HIGHWAYS. *Contracts to work roads. Liability on bond.*
   Where a road contract made the members of the board of supervisors the sole judges of whether the roads were being worked according to the plans adopted, the fact that the board refused to report the roads as properly worked and failed and refused to pay the contractor for work done, did not prevent a recovery on the contactor's bond for damages from the abandonment of

the contract by him, where the members of the board did not act fraudulently.

3. HIGHWAYS. *Contract to work roads. Damages for breach.*
Where a county contracted with defendant to work certain roads for the years 1912, to 1916, for thirty-four dollars and fifty cents a mile for 1912, and nineteen dollars and ninety-five cents a mile for the other years, but defendant did not maintain the roads for 1912, in accordance with his contract, and was paid only a part of the amount he would have received if the roads had been properly worked, and he later abandoned the contract, and the county relet the work for the remaining years to other contractors. In such case, while the new contractors probably bid more than they would have bid if defendant had maintained the roads in 1912, according to his contract the measure of damages for his breach was nevertheless the difference between the cost of the work under the new contracts and the amount for which defendant agreed to do the work for the years 1913 to 1915, inclusive, without taking into consideration the amount which defendant would have received, if he had maintained the roads in 1912 according to contract.

4. HIGHWAYS. *Contracts to work roads. Liability for breach.*
Where a road contractor abandoned his contract he could not complain, when sued for the difference between the cost of the work under the new contract and the amount for which he had agreed to do the work, that before reletting the work, the county for a time had the roads worked by convicts, where they did not work in an unworkmanlike manner, and no recovery was sought for the period covered by their work, since if the roads had been contracted to new contractors at an earlier date, it would simply have added to the damage for which he was liable.

5. HIGHWAYS. *Contracts to work roads. Liability for breach.*
The temporary arrangement made by the county for working the roads by convicts, did not operate as a waiver of their right to relet the contract for the unexpired term of the defendant's contract, and hold him responsible for the difference in cost.

APPEAL from the chancery court of Jefferson Davis county.

HON. D. M. RUSSELL, Chancellor.

Suit by Jefferson Davis county against the United States Fidelity & Guaranty Company and another. From a judgment for plaintiff, defendant appeals.

This is the second appeal of this case. The first appeal will be found reported in *Jefferson Davis County* v. *Burkett,* 109 Miss. 436, 69 So. 221. The allegations of the bill are fully outlined in the former opinion. B. G. Burkett, one of the appellants, was awarded the contract for the working of the public roads, first and second class, of Jefferson Davis county from March 1, 1912, to January 1, 1916. By the terms of the contract Burkett was to be paid thirty-four dollars and fifty cents per mile during the year 1912, and nineteen dollars and ninety-five cents per mile for the remaining term of the contract. Fifty per cent. of the contract price for any year was to be paid on the first Monday of July of that year, twenty-five per cent. the first Monday in October, and the remaining twenty-five per cent. the first Monday of the following January, "when said roads shall be inspected and received by the committee appointed by the board of supervisors and reports the said roads worked to plans and specifications." The contract provided that the road should be constructed and maintained up to and according to certain plans and specifications adopted by the board and on file with the clerk. By the terms of the contract, Mr. Burkett was to go over the roads as often as once every three months, and as many times more as might be necessary, with a road machine, and "to keep said roads worked, graded, and maintained in all respects as per plans and specifications herein made a part of this contract." It is further provided that, if the roads are not worked up to plans and specifications, the board shall deduct from the contract price for that division of time in which the roads were not up to plans and specifications, and "the amount to be so determined shall be done by the said board only, and not the contractor." Prior to the letting of the contract to Burkett in 1912, the working of some of the roads of the county had been let by contract to Ball & Thomasson, whose contracts expired March 1, 1912. Mr. Burkett also had a contract

for working certain portions of the roads prior to 1912. It appears that Ball & Thomasson did not complete their contracts by March 1, 1912, and upon application were granted certain additional time in which to complete their work. It further appears that they never did fully complete their contract, and forfeited to the county some eight hundred and fifty dollars balance due them under their said contracts. Mr. Burkett began to perform his new contract in 1912, but the proof shows that he got behind with his work in the summer of 1912, and the board of supervisors entered an order upon its minutes extending his time until the first Monday in September, 1912, to get the roads up to plans and specifications. There was a controversy, however, between Mr. Burkett and the members of the board about certain portions of the roads; Burkett complaining at times that the board would not pay him the balance due under his contract price, and at least two members of the board, whose duty it was to inspect the roads in their respective districts, contending that certain lengths of the roads were not up to plans and specifications. Aside from any controversy, however, between Mr. Burkett and the board, Mr. Burkett at the October, 1912, meeting tendered the following resignation as road contractor:

"To the Honorable Board of Supervisors of Jefferson Davis County, Mississippi:

"I, B. G. Burkett, hereby tender my resignation as a road contractor, for Jefferson Davis County, Mississippi, and ask that the same be received and accepted at once, and that I be relieved as such contractor, for the following reasons:

"(1) The contract under which I have been working and maintaining the roads is void, for the reason that the same was not let and entered into as the law required.

"(2)  I have been working and maintaining the roads since I have entered into said contract with Jefferson Davis county at a great financial loss to myself, and I am thoroughly convinced that it will be impossible to continue working and maintaining the roads of the county at the price allowed me by the contract without utter financial ruin to myself.

"(3)  In further explanation of this action, I will state to this honorable board that, at the time the present contract was offered to the public, the same was accepted by me and the public as being based upon a completed contract by the previous contractors, which in fact was never done; but the work left undone by the said previous contractors has been left without additional compensation so far to the undersigned, and this additional burden in connection with the unprecedented amount of rain which has constantly wrecked and ruined great quantities of work done by me, has occasioned additional expense upon me until all my workable capital has been consumed, and I am unable to make further outlay in addition to the allowance from the board upon said work, and I am now in position to return the roads back to the county in better condition than when received by me as such contractor.

"Witness my signature this the 7th day of October, 1912.

"B. G. BURKETT."

The board declined to accept the resignation or to release Mr. Burkett from his contract, and promptly gave notice to the United States Fidelity & Guaranty Company, surety on Burkett's bond, of the fact that Burkett had breached his contract, and the intention of the board to hold the surety liable for any damages occasioned by the breach. The surety declined to perform the contract for Burkett, and, after an abandonment by both Burkett and his surety, the county sub-

sequently relet the work to other contractors, and thereafter instituted this suit for the recovery of damages. Demurrers were first sustained to the bill of complaint, but upon an appeal to this court the decree of the lower court was reversed and the cause remanded. Burkett then filed an answer denying the material allegations of the bill and made his answer a cross-bill. After issue joined, the defendants requested the chancellor to award them a jury trial, and in compliance with this request a jury was impaneled and the cause tried by the chancellor and a jury. Upon the trial of the case the chancellor granted certain · instructions, about which appellants now complain, and refused certain other instructions, which they contend should have been given. The jury returned a verdict for nineteen thousand seven hundred and twenty-six dollars and seventy-two cents, which the chancellor adopted, and upon which final decree was entered. The court, for the complainant, peremptorily instructed the jury that Burkett had breached the contract sued on.

In addition to the complaint made as to the instructions, appellants complain, and their main contention is that the court and jury did not apply the proper measure of damages. It is their contention that the measure of damages is the difference between the unpaid contract price at the time of the breach and what it seasonably cost the county to complete the work; and more specifically they contend that the following calculation should govern:

Cost to the County under the Old Contract.
First year, 351¼ miles at $34. 50 per mile ..$12,118.12
Second year, 351¼ miles at $19.95 per mile ..  7,007.43
Third year, 351¼ miles at 19.95 per mile ..  7,007.43
Fourth year, 351¼ miles at 19.95 per mile ..  7,007.43

Total   ..... ..............................$33,140.41

Deduct the total amount paid to Burkett un-
    der his contract ........................$4,753.04

Balance  .............................$28,387.37

### New Contract.

Amount expended by appellee under new con-
    tract  ...............................$41,268.43
Deduct therefrom the said ................$28,387.37

Difference  ..........................$12,881.06

—which amount they claim under any view of the case is the maximum damages shown by the proof.

Counsel for appellee, on the contrary, contend that according to any one of three methods of calculation the verdict of the jury must be upheld. It is their contention that the new contracts did not cover the year 1912, but only the years 1913, 1914, and 1915; that the new contracts were let at a material increase of cost per mile, the roads in district No. 1 being let at thirty-three dollars per mile the first year and twenty-one dollars per mile for the balance of the unexpired term, the roads in beat three costing thirty-six dollars and fifty cents per mile, those in beat four thirty-four dollars and seventy-five cents per mile, and those in beat five forty-five dollars per mile; that the bids for the new contracts were competitive bids at public auction after due advertisement; that under any fair construction of the contract the amount Burkett would have received for the balance of the year 1912 should be ignored, and the calculations based upon what Burkett would have received for the years 1913, 1914, and 1915, and what it cost the county under the new contract for that period. According to a tabulated statement made and filed by the chancery clerk, the total amount actually paid out by the county to the new contractors for the years 1913, 1914, and 1915 is forty-one thousand two hundred

and sixty-eight dollars and forty-three cents. If Burkett had completed his contract, he would have received twenty-one thousand and twenty-two dollars and twenty-nine cents. The difference, according to appellee's contention, is twenty thousand two hundred and forty-six dollars and fourteen cents, which the county should recover. The proof shows that, after Burkett breached his contract, the board of supervisors worked the roads in district 1 by convicts for some time before they made a new contract for the working of the roads in that beat. One of the contentions of appellants is that this was an abandonment of any plan to relet the contracts, and a waiver of the board's right to recontract the roads and hold Burkett for the difference.

The president of the board of supervisors testified to certain figures tabulated by him of the total expenditure made by the county in reletting the contract. He figures that it cost the county forty-five thousand three hundred and four dollars and twenty-one cents for the year 1913, 1914, and 1915. In addition to the complaint which Mr. Burkett made that Ball & Thomasson had not completed their contracts, and thereby placed on him an increased burden in working the roads in 1912, he claims that the county owed him a balance of two hundred and two dollars and fifty cents on his first contract with the board. By instruction No. 2 granted the defendants, the jury was directed to consider these items and in asessing the damages they must determine how much the county should allow Burkett on account of these two items of eight hundred and fifty dollars and two hundred and two dollars and fifty cents.

*Watkins & Watkins* and *W. M. Hall,* for appellants.

*McIntosh Bros.* and *Flowers, Brown, Chambers & Cooper,* for appellee.

STEVENS, J., delivered the opinion of the court.

(After stating the facts as above): Much is said in the briefs of counsel upon the contention made by appellee that a trial by jury in a court of equity is discretionary; that the chancellor has a right to direct a verdict, to adopt or reject the verdict of the jury and enter such decree as comports with his own conscience and his own conclusions upon the facts. It is the contention of appellee that any errors made in instructions cannot be relied upon by appellants, for the reason that the chancellor has adopted the verdict of the jury and thereby made it his own verdict on the facts; that, after all, the verdict of the jury amounts simply to the finding by the chancellor that complainant was entitled to recover the sum of nineteen thousand seven hundred and twenty-six dollars and seventy-two cents.

Under our view of this record, it is immaterial whether appellants may predicate error on the granting or refusing of instructions. The proof indisputably shows that Burkett breached his contract. The statements in his written resignation are against him on this point. In his written resignation submitted to the board he stated, and on demurrer to the bill in this case he successfully contended, that his contract with the county was illegal and void. It required an opinion of this court on the first appeal to determine this question. Furthermore, Mr. Burkett practically admits in his resignation that the price at which he agreed to work and maintain the roads would result in his financial ruin. In other words, he frankly admitted that he had made a poor contract and could not live up to it. He entered into a thirty-five thousand dollar bond, and under the proof this bond is liable for the actual damages sustained by the county the result of an admitted breach of the contract. There was no error, then, on part of the chancellor in granting the peremptory instruction No. 1, and we see no substantial error

in the granting of any of the instructions given upon the trial of this case.

Appellants complain of the refusal of certain instructions which in effect told the jury that if they believed that Burkett worked and maintained the roads in accordance with the plans and specifications, and that notwithstanding this fact the members of the board acted arbitrarily and wrongfully in refusing to report the roads worked up to plans and specifications, and for that reason failed and refused to pay Burkett for the work already done, that then Burkett had a right to discontinue his work, and in such event the jury should find for the defendant. The contract itself expressly stipulates that the members of the board are to be the sole judges as to whether or not the roads at any time are in fact worked according to the plans adopted. The board by the terms of the contract are invested with a discretion in determining whether the roads are maintained according to plans and specifications. They are public officers, and the contract expressly invests them with discretion and judgment in the premises. There is no evidence that any member of the board acted fraudulently. There was no error, therefore, in refusing instructions that the jury might find for the defendant.

The contract for the breach of which damages are here sought is materially different from a building or purely construction contract. We have said in the opinion heretofore rendered:

"This is a contract, not only for constructive work, but for the continuous repair and maintenance of roads, from day to day and from month to month, during the period provided for."

It was a contract that required Mr. Burkett at all times to oversee the public roads and to expend from day to day and week to week needed labor and material. In the very nature of things the public roads are for the use of the traveling public day and night,

and the contractor assumed the obligation of keeping the first and second class roads of the county in a passable condition. More than this, he obligated himself to keep and maintain them according to the plans agreed upon. By the terms of his contract he was to be paid in July, October, and January. He failed to maintain the roads for the year 1912, and as a result thereof was only paid four thousand seven hundred and fifty-three dollars and four cents. If he had maintained the roads in 1912 according to contract, he would have received twelve thousand one hundred and eighteen dollars and twelve cents. He did not give the traveling public and the county what they were entitled to receive for the year 1912. In January, 1913, the board relet the contracts, and confessedly in reletting the contracts the board could not possibly then relet a contract for the working or maintenance of the roads for the year 1912. They did, however, relet the contract for the years 1913, 1914, and 1915, and this at a materially increased rate per mile.

Counsel for appellants with much persuasion contend that any measure of damages requires that we should take into account what Burkett would have received in the year 1912, had he completed his contract for that year. The new contractors, however, were not concerned with the year 1912, and necessarily confined their bids to the balance of the time, subsequent to the year 1912. It may be true that the new contractors bid more for the year 1913 than they would have bid if Burkett had maintained the roads in 1912 strictly according to his contract. But this is speculative, and a matter about which it is impossible for the court to have actual knowledge. If this were a building contract, manifestly the amount Burkett would have received in 1912 should be taken into account. But in the reletting of a building contract the owner ultimately gets what he originally contracted for—a completed building, one structure. In the instant case it was impossible for

the county, upon reletting the contracts, to get what it originally contracted with Burkett to receive, to wit, good roads continuously from March 1, 1912, to January 1, 1916. Furthermore, this contract is fairly divisible into different years. If Burkett had maintained the roads according to contract for the year 1912, he would have been entitled to receive the full consideration for that year. By his own fault he placed himself in an attitude where he could not recover for any balance due in 1912. Certain it is that he earned nothing for the years 1913, 1914, and 1915, and for those years he was paid nothing. By the very terms of his contract he was to receive nineteen dollars and ninety-five cents per mile for each of these three years, a stipulated price different from that for 1912. At the expiration of the year 1912, the board could only relet and did relet a contract for the last three years, and in doing so proceeded according to statute, and were governed by the lowest bid submitted. Surely the county has a right to recover what it actually cost the board in having done what Burkett was obligated to do. It is contended that Burkett had practically maintained his roads according to grade and plans on the first Monday in October, 1912, when he resigned. There is evidence, however, of certain objections and defects which had not been complied with, and it may be assumed that at no time had Burkett fully complied with his contract.

In their contention that the contract was one and indivisible, counsel for appellants rely upon the case of *United States Fidelity & Guaranty Co.* v. *Tate County,* 74 So. 769 (No. 18,868), decided by Division A of this court at a former day of this term. The issue in the last-named case, however, was a different issue from the one here presented. In the Tate County case there was, as here, only one contract, and one breach of that contract. The sole point presented to the court was whether there was one, or more than one, cause of

action for damages against the contractor. The court correctly held that, in the one suit for damages, all damages then or thereafter to be sustained should have been recovered. The court in that case did not undertake to hold that, if the contractor had performed fully his work for any installment, he would not be entitled to recover that installment and proceed with his work; that the compensation provided by the contract to be paid in any installment is designed to cover, and must cover, work done for that period of time. The writer is clearly of the opinion that if the contractor had earned any particular installment, and had not breached his contract, he would be entitled to demand of the board any past-due installment, and upon their refusal to pay he could institute proper action for the recovery thereof. So in the instant case Mr. Burkett could have completed his contract for the year 1912, and in the absence of a breach of his contract might have compelled the county to pay him for that particular year. We believe that, in reletting the contracts for the years 1913, 1914, and 1915, the board had a right to ignore the period of time covered by 1912, to deal with new contractors for the unexpired term, and, if the new contracts are seasonably let, to recover from Burkett the actual difference between the new contracts and what Burkett himself would have received for the indentical time covered by these new contracts.

We do not think Mr. Burkett has a right to complain at the action of the board in working the roads by convicts for a short period of time. If the roads in district No. 1 had been contracted to new contractors at an earlier date, it would have simply added to the damages for which Burkett is liable. It appears from all the evidence that Burkett must have contracted at a low figure, and that upon any reletting of the contracts for any beat there would have been an advance in the bid. It is evident that Burkett is

not being held liable for any period of time in which the convicts worked the roads in district No. 1. We do not think this temporary arrangement on the part of the board operated as a waiver of their right to relet the contract for the unexpired term of Burkett's contract. There is no intimation that the convicts did their work in an unworkmanlike manner, or that Burkett in any wise suffered damages by reason of the delay. The verdict of the jury was fully warranted by the testimony and we see no cause to disturb it. The bond in this case has been made to answer the very purpose for which it was executed.

*Affirmed.*